**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hargus SMITH, Jr., Carl Andrew Hughes, and Walter Roscoe Mullins, Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter Roscoe MULLINS, Defendant-Appellant.**

**Nos. 20651, 20652.**

United States Court of Appeals,
Sixth Circuit.

April 30, 1971.

**609**

Graddy Johnson (court appointed), Lexington, Ky., for appellants Smith and Hughes.

W. Thomas Bunch (court appointed), Lexington, Ky., for appellant Mullins.

Robert E. Rawlins, Asst. U. S. Atty., Lexington, Ky., for appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before WEICK and EDWARDS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

**PER CURIAM.**

Appellants and one Richardson were charged in a four-count indictment with the theft of letters from rural mailboxes and the possession of Social Security checks which were stolen therefrom, in violation of 18 U.S.C. § 1708. Richardson pleaded guilty. Appellants were convicted by a jury and sentenced to three years' imprisonment on each count, to be served concurrently.

Because of previous complaints of mail theft, Detectives Kitchen and Arnett of the Fayette County Police Department, during the morning of December 3, 1969, established surveillance of a cluster of rural mailboxes at the entrance to the C. V. Whitney farm near Lexington, Kentucky. They soon observed a white 1956 model Cadillac move slowly past the mailboxes to a point about 150 feet away, and wait for another car to pass and proceed around a curve out of sight. The Cadillac then backed up to the mailboxes. An arm extended from the Cadillac into a mailbox and retrieved an item therefrom, then the Cadillac proceeded down the road out of the vision of the officers. About five to eight minutes later a rural mail carrier appeared and deposited mail in these boxes. A few minutes thereafter the Cadillac reappeared, moved up to the mailboxes and stopped. An arm extended from the other side of the car and removed mail from the boxes, and the Cadillac proceeded down the highway. It was followed by the officers in a police cruiser.

When the Cadillac stopped along side of other mailboxes the police cruiser stopped and the detectives arrested the appellants and Richardson, all of whom were in the Cadillac. Detective Arnett searched the car and found stolen letters on the front and back seats and stolen Social Security checks on the front floor of the car.

Mullins was the driver of the car. At the time of their arrest and when they were interviewed at the police station appellants were given *Miranda* warnings (384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

694), but they made no statements. On the same day they were taken before a United States Commissioner, who again advised them of their rights.

Attorneys were appointed for appellants Smith and Hughes, but Mullins advised the Commissioner that he would employ his own lawyer.

On the following day, because Postal Inspector Troutman received information that Mullins desired to talk, he and Detective Arnett went to the jail and interviewed Mullins, again advising him [Mullins] of his rights. During the interview Mullins made an inculpatory statement.

At the trial, Richardson, who had pleaded guilty, testified as a witness for the appellants. He testified that all four of the defendants were on a hunting expedition for rabbits; that he told Mullins to stop at the mailboxes; and that he [Richardson] "took some mail out of two mailboxes" which he believed belonged to Sharp and Redmon. He said there was no conversation about picking up mail, but "People knew I had been doing it previously." In fact, only a month before he "took two checks belonging to the residents there" at the same location.

Mullins, Smith and Hughes testified that Richardson told them he was taking mail from his uncle's mailbox and would deliver the mail to the uncle when asking for permission to hunt on the uncle's farm. There was no uncle living in that vicinity. Mullins further testified that when Richardson finally told them that he had stolen the mail, they intended to return it but it was too late as the officers appeared and arrested them.

Richardson, in his testimony, said nothing about having an uncle, or taking the uncle's mail, or desiring to hunt rabbits on the uncle's farm.

Mullins argues that the Court erred in admitting in evidence the inculpatory statement. The Government contends that the issue is not properly raised in the District Court, but in any event the statement was admissible against Mullins.

Detective Arnett testified relative to taking the statement, as follows:

"Q Now, Detective Arnett, would you tell what the defendant Mullins told you?

"A Yes, sir. I asked him what he was doing or where he was going. I don't know how the conversation came around, but he said these other people, they had breakfast with him some place on Limestone and they told him to get a car and they would go out in the country and get some checks.

"Q And did he indicate that he knew for what purpose he was driving out there?

"A Only as to the part where they would get the checks.

"Q Was anyone—

"MR. ROSS: Will you note my objection for the record, sir.

"THE COURT: Yes, sir. Overruled.

"Q Was anyone with you at the time you took this oral statement?

"A Mr. Troutman.

"Q Mr. Troutman, the man sitting here to my right?

"A Yes, sir.

"MR. SILER: That is all we have, Your Honor."

No objection was made to the questions eliciting the statement, nor to the answers. The only objection was to the incomplete question, "Was anyone ——," which objection was made before the question was completed and the Court overruled it. The ground of the objection was not pointed out as required by Rule 51, Federal Rules of Criminal Procedure.

The question was then completed, as follows:

"Q Was anyone with you at the time you took this oral statement?

"A Mr. Troutman."

No objection was made to the completed question or answer. No motion to

strike the answers to the previous questions was made. Instead, defense counsel cross-examined Arnett concerning the place where the statement was obtained.

Postal Inspector Troutman testified in rebuttal on direct examination as follows:

"Q Did you have occasion to be with Sergeant or Detective Arnett when he questioned Mullins here?

"A Yes, I did.

"Q Did you warn the defendant Mullins of the same thing that the detective did?

"A I reminded him of the admonition that had been given to him the previous day and the warning of his rights or admonition of his rights was read to him by Sergeant Arnett.

"Q What did he tell you at the time?

"A In the course of the conversation with him, he told us that he borrowed this car, he knew the purpose for going out. At first he said about hunting, but the hunting he said was for checks. 'Anywhere in particular?', I said. 'Anywhere we can find them.'

"Q Did he state anything with regard to the Gaines farm?

"A He said that, 'When we stopped at the Gaines farm, it was for the purpose of looking in the mail box there.'"

The fact that *Miranda* warnings were given was not controverted. Mullins denied making the statement.

On redirect examination, Troutman further testified:

"Q Mr. Troutman, did you and Sergeant or Detective Arnett come there acting in response to a request by Mullins or did you go on your own?

"A I had information that Mullins wanted to talk to us."

No objection was made to any of the questions propounded to Troutman. No request was made to the Court to strike the testimony, or to determine the voluntariness of the statement, or to charge on anything except the cautionary instruction which the Court gave to the jury at least three times that Mullins' statement could be considered only against him and not against the other defendants.

■ The Court was not required sua sponte to determine the voluntariness of Mullins' inculpatory statement. United States v. Frazier, 385 F.2d 901 (6th Cir. 1967).

■ Since the question of the voluntariness of the inculpatory statement was never raised in the District Court, we are not required to pass upon it. But even if the admission of the statement was error, we are of the opinion that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The facts and circumstances of the case, as testified to by Detectives Arnett and Kitchen, clearly show that the defendants were engaged in rifling rural mailboxes instead of hunting rabbits, and that their stories were incredible. They had with them no dogs nor guns to shoot rabbits. They offered no proof that this area was adaptable for hunting. Besides, Richardson was known for having picked up mail in the past. He had a criminal record. His codefendants had known him for several years.

Appellants Smith and Hughes complain about the instructions of the Court to the jury, but they made no objection to them, and made no request to instruct as to any matter concerning which they now complain.

Appellants Smith and Hughes complain about the admission of Mullins' inculpatory statement, but the Court did not admit the statement as evidence against them. The Court specifically instructed the jury, at least three times, that it could not be considered against them.

Rule 51, Fed.R.Crim.P., precludes us from considering any error in the admission of evidence not objected to, and

Rule 30 precludes us from considering alleged errors in the instructions of the Court not objected to or pointed out at the trial. In our opinion, there was substantial evidence to support the conviction of all of the appellants. We do not find any plain error in the record.

Affirmed.

Jones, Circuit Judge, concurred in the result.